UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>NICHOLAS COREY GARNER,  )<br>  )<br>    Defendant.  ) | Criminal Case No.<br>12-cr-65-JMH<br><br>**MEMORANDUM OPINION** |

\*\*\*

At the sentencing hearing in this matter on Monday, February 2, 2015, this Court heard argument from counsel and defendant, proceeding *pro se*, as well as the testimony of United States Secret Service Special Agent Allen Lowe, with respect to several enhancements available under the United States Sentencing Guidelines. For the most part and after consideration, the Court adopted the conclusions urged by the argument of counsel for the United States and the Presentence Report prepared by the United States Probation Office with respect to the applicable specific offense characteristics and adjustments.[1]

---

[1] The Court had already reached and announced its rationale and conclusion with respect to the calculation of the amount of loss attributable to Defendant Garner and the enhancement applied based on that calculation.

Several of the specific offense characteristics and adjustments proposed in the Presentence Report were contested by Defendant, and the Court enters this Memorandum Opinion to memorialize the basis and reasoning for its decision with respect to the specific offense characteristic related to number of victims and the adjustment for defendant's role in the offense, in addition to what was announced on the record at the hearing with respect to these and other specific offense characteristics and enhancements.

## I.

At the hearing, Agent Lowe testified that he spoke personally to more than 250 victims on the telephone, a number which included both those individuals who spoke to and reported to him that they had been victimized and suffered loss as a result of the conspiracy at bar in this matter when he first telephoned them and those individuals who called him back and reported to him that they had been victimized and suffered loss as a result of the conspiracy at bar in response to a message that he left for them concerning this matter. The Court finds and concludes that this is sufficient to establish by a preponderance of the evidence that the offense of which Defendant Garner stands convicted involved 250 or more victims, yielding a 6 level increase to the base offense level under U.S.S.G. 2B1.1(b)(2)(C).

**II.**

With respect to the adjustment made for Defendant Garner's role in the offense under U.S.S.G. §3B1.1(a), a preponderance of the evidence supports the conclusion that Defendant Nicholas Corey Garner was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. To justify the imposition of a leadership or organizer enhancement under U.S.S.G. § 3B1.1(a), the government must show by a preponderance of the evidence that a defendant "was an organizer or leader of a criminal activity that involved five or more participants." *See United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). Based on Agent Lowe's testimony, the Court concludes that, while Garner received instructions from "Rob", Garner had his own "team" which included more than five members. A conclusion on the number of participants can be reached by simply counting the eight U.S. based co-conspirators named in this matter who worked together under the guidance of Nicholas Corey Garner (Sabrina Carmichael, Eli Holley, Brooks Sowell, Jelahni Williams, April Abrams, Dwayne Hardy, Nathaniel Garner, and Harold Smith). Additionally, the Court considers the notations in the ledger which was seized from Garner's possession at the time of his arrest on September 15, 2012, near Indianapolis, Indiana. Those notations indicate which "team" member conducted each transaction, transactions which have been

3

confirmed by means of a subpoena of records from Western Union and MoneyGram. The number of distinct notations also supports the conclusion, based on a preponderance of evidence, that more than five "team" members were involved in effecting the transactions listed in the book.

In determining Nicholas Corey Garner's role as a leader or organizer, the Court considers that, "[i]n general, 'a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted.'" *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000) (*quoting United States v. Gort-Didonato*, 109 F.3d 318, 321 (6th Cir. 1997)); *see also United States v. Walls*, 546 F.3d 728, 735 (6th Cir. 2008); *United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2007); *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004). "Control" derives from "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 comment. (n.4). Thus, many of these factors emphasize control over others in the criminal activity.

4

Agent Lowe testified that Garner sought and received instructions from an individual known as "Rob" during the course of the conspiracy. During the hearing on February 2, 2015, Garner described "Rob" as "the man," with respect to his role in the conspiracy from Garner's perspective. Rob's relatively higher level role in providing direction to Nicholas Corey Garner and others does not change the fact that, according to Agent Lowe's testimony, Nicholas Corey Garner sought and accepted opportunities from Rob for his "team" to complete transactions via email and other means; that he received and in turn transmitted information about jobs to his "team" of U.S.-based co-conspirators; that he exercised some discretion in selecting where the transactions would occur, within certain geographic boundaries; that he identified and solicited his "team" members in order to complete the jobs assigned to his "team"; and that his "team" earned money for completing transactions, a percentage of which (five percent) was then paid to him for the work of the "team" members that he led.

The Court so finds and concludes that the United States has demonstrated, by a preponderance of the evidence, that Defendant Nicholas Corey Garner exercised decision making authority, was a conduit of information concerning the next steps in the criminal activity for his "team" members, recruited accomplices, and claimed a right to a larger share of the fruits of the crime

5

when compared to the other U.S.-based co-conspirators named as defendants in this matter.  While his degree of participation in planning or organizing the offense was not at the level of "Rob," his degree of participation in planning and organizing the specifics of the receipt and transfer of the proceeds of the offense – once that job was assigned to Garner's group - was substantial. Further, the evidence reveals that his role was on-going across the course of the time-frame of the conspiracy. The Court recalls Agent Lowe's testimony from the loss hearing concerning times when other co-conspirators, including Sabrina Carmichael and Brooks Sowell, filled his leadership and organizational role while he was unavailable due to incarceration, but that the leadership role returned to Nicholas Corey Garner each time, once he was again available for it.

　　　　This the 4th day of February, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge