UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Criminal Case No. |
| v. ) | 12-cr-65-JMH |
| ) | |
| NICHOLAS COREY GARNER, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court with respect to restitution as to Defendant Nicholas Corey Garner. The Court has had the benefit of the United States' Memorandum on Restitution [DE 691], as well as the presentation of evidence by the United States and argument by counsel for the United States and the attorney for Defendant Garner during the hearing conducted on April 20, 2015 [DE 738, 739]. At the conclusion of the hearing, the Court announced its decision with respect to restitution due from Defendant Garner in this matter. The Court memorializes some aspects of that decision in this Memorandum Opinion, as set forth below, and announces one modification to that decision, as well.

The Mandatory Victims Restitution Act (MVRA) requires district courts to award restitution to identifiable victims of

fraud. 18 U.S.C. §§ 3663A(a)(1), 3663A(c)(1)(A)(ii). A "victim," for purposes of the MRVA, is defined as any "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern." *Id*. at § 3663A(a)(2). For purposes of restitution liability, "co-conspirators are held jointly and severally liable for all foreseeable losses within the scope of their conspiracy regardless of whether a specific loss is attributable to a particular conspirator." *United States v. Moeser*, 758 F.3d 793, 797 (7th Cir. 2014) (*citing United States v. Berkowitz*, 732 F.3d 850, 853 (7th Cir. 2013); *United States v. Dokich*, 614 F.3d 314, 318 (7th Cir.2010); *United States v. Martin*, 195 F.3d 961, 968–69 (7th Cir.1999)). Accordingly, the United States need not "prove 'a direct causal relationship between the defendant's personal conduct and a victim's loss,' because 'the MVRA imposes joint liability on all defendants for loss caused by others participating in the scheme.'" *Id*. (citing *Dokich*, 614 F.3d at 318 (emphasis added)). Still, in a multi-defendant case where joint and several liability is applicable, the government is required to establish, by a preponderance of the evidence, a causal connection between the victims loss and the fraudulent

scheme. *See United States v. Martin*, 195 F.3d 961, 969 (7th Cir. 1999).

In its decision on the issue of the amount of loss attributable to each defendant in this matter for the purposes of properly calculating the sentencing guidelines [DE 558], this Court reached a conclusion with respect to the amount of time, demonstrated by a preponderance of the evidence, that each defendant was part of the conspiracy charged in this matter. For the purposes of restitution, the United States has asked that the Court impose joint and several liability on each of the defendants in the amount of actual loss suffered by individuals who were victimized by the scheme during the defendants' individual periods of involvement in the scheme. In light of the case law and the Court's earlier decisions, the Court concludes that this is an appropriate attribution of loss for purposes of restitution in light of the conspiracy conducted by the defendants and others. Thus, Defendant Garner will be held jointly and severally liable for all foreseeable losses within the scope of the conspiracy during the course of his involvement regardless of whether a specific loss is attributable to him – so long as the loss was caused by others participating in the conspiracy. In reaching this conclusion, the Court rejects Garner's argument that the United States' has presented

insufficient evidence and failed to carry its burden to support the claim for restitution by a preponderance of the evidence.

Garner argues, primarily, that the United States has failed to present evidence of actual loss for each and every victim identified, i.e., proof that the individuals identified as victims did not receive vehicles in exchange for the money sent to bank accounts or through Western Union or MoneyGram. He has also attacked the reliability of the evidence on the grounds that the summary chart upon which the United States' relies does not list dates and that such a chart would not be admissible in a civil proceeding. He also objects to Agent Lowe's testimony concerning what he has learned from others and from the evidence available on the grounds that it is hearsay.

With respect to Garner's first objection, Agent Lowe testified that he had found no individuals who received a vehicle in return for their transmittal of funds under the scheme – certainly none of the individuals that he interviewed on the telephone or those who returned documentation to the United States Probation Office or the United States Attorney's Office as part of its investigation. The Court considers his testimony to be sufficient to support the government's position by a preponderance of the evidence. Defendant has produced no evidence which would persuade the Court otherwise.

The Court considers Garner's next objections in light of three natural groupings of evidence identified by the United States: those transactions which were recorded in the ledger discovered in the car at the time of Nicholas Corey Garner and Eli Holley's arrest (WU/MG); those related to victims who sent money via the wires to bank accounts set up by the co-conspirators (BLV); and that related to those transactions investigated or discovered through the investigation conducted by the Louisville Metro Police Department (LMPD).

During the restitution hearing, the United States introduced a spreadsheet which United States Secret Service Special Agent Allen Lowe testified to be a list that he compiled from information that he had obtained from the course of the investigation of this matter and which identified each individual victim of the conspiracy known to him and the amount of loss suffered by each those victims. The United States also introduced an individual spreadsheet for Defendant Garner, which Agent Lowe testified to be a list of the same information as contained in the larger spreadsheet in light of Garner's period of involvement in the conspiracy.

The Court also heard testimony from Agent Lowe during the restitution hearing, which piggybacked onto his testimony during the hearing on the amount of loss and the sentencing hearings in this matter, in which he described how a black notebook or

ledger was seized from the car in which Defendants Nicholas Corey Garner and Eli Holley were arrested in September 2011. That ledger was entered into evidence in this matter during the loss hearing. Lowe explained and the Court has observed itself that the ledger contains what appear to be lists of transactions. Using that information, investigators sent subpoenas to Western Union and Money Gram for information connected to the notations found in that ledger which, as it turns out, corresponded to actual transactions conducted via Western Union and MoneyGram and received by members of the Garner group in the course of their conspiracy. Lowe has also testified before this Court, during other proceedings, that he contacted as many of the individuals who sent money in those transactions as he could (over 250 individuals) and that each told him that he or she had been defrauded of funds sent for the purchase of a vehicle advertised at one of many online sites which was never delivered to them.

Agent Lowe has also testified that some of the information that he gathered about these victims and the amount of loss incurred as a result of those transactions was obtained from records provided by the victims themselves – victim impact statements, declarations of victim loss, other types of statements, receipts, and the like. Those victims and losses

are reflected in those entries in the spreadsheet designated "WU" or "MG".

Other transactions attributable to the conspiracy were discovered through other means during the investigation, and Lowe has indicated them as "BVL," meaning that the transaction in question was a bank wire transfer from an individual victim for the purchase of vehicle into an account established by someone within the conspiracy group, or "LMPD," meaning that the information concerning these victims was provided to him by investigators from the Louisville Metro Police Department who were investigating internet fraud activities in that geographic area. Again, Lowe indicated during his testimony and notations on his spreadsheet that in some instances he also relied on additional supporting documents to establish the identities of these victims and their amounts of loss – declarations of victim loss, victim impact statements, or other materials, like receipts – suffered as a result of the activities of the conspiracy.[1]

The Court has already accepted that the transactions recorded in the ledger (WU/MG) or received by bank wire (BLV) are evidence of intended or actual loss attributable to the

---

[1] Agent Lowe has testified that in those instances where money has been returned to the victims to cover their loss from a source, he has entered a "zero" in the chart to reflect the absence of restitution available to that victim. He also omitted any claims for mental anguish or pain and suffering communicated by the victims.

conspiracy for the purposes of calculating the sentencing guidelines. Now, the Court sees that collection of ledger notations, from which investigators were able to craft subpoenas and recover information from Western Union and Moneygram as to the true identity of the payors listed in that ledger and their amount of loss, as evidence of actual loss which impacted real, identifiable people, directly and proximately harmed by the fraudulent activities conducted by the conspirators. The same is true for the evidence concerning the bank wires and information gained related to those individuals who wired money into those accounts but never received the item they sought to purchase. The Court considers this evidence sufficient for its purposes in the restitution inquiry. The evidence presented makes it more likely than not that the victims' losses as identified by Agent Lowe were caused by acts undertaken in the course of the conspiracy by indicted (and now convicted) and unindicted co-conspirators.

As for those transactions investigated by the LMPD, Agent Lowe testified that his contact in that agency, Detective Maroni, advised him that he had learned through the course of his investigation that the named individuals were each the victim of an Internet scam which was conducted in the same way as that conducted by the co-conspirators in the instant matter. The individuals sent money in amounts similar to the those

transactions recorded in the ledger, ranging from around $2,500 to around $3,500, for the purchase of a vehicle advertised on a sales websites and never received a vehicle in return. As the Court has heard before, some of those individuals received emails indicating that the vehicle "for sale" had belonged to the "sellers'" son who had died following a car accident and that the "seller" wished to get rid of the vehicle because of the sad memories associated with it. The Court recalls evidence from the loss hearing which revealed that files or emails containing that narrative were found on computers in the possession of and used by some of the co-conspirators in this matter. Further, as Agent Lowe explained, the funds from each of these individuals were sent to the Louisville area in the same time frame as the co-conspirators in this matter were operating in the area, receiving funds from other locations. Finally, Agent Lowe testified that at least two of the transactions investigated by the LMPD were also listed in the ledger and were verified by materials received in response to subpoenas issued to WU and MG as part of his own investigation.

Agent Lowe has also testified that Detective Maroni was, at that time, the only investigator at LMPD assigned to track and investigate internet-based crimes and that Detective Maroni had informed him that the Garner group was the only group of which he was aware which was conducting fraudulent activities of this

sort in the area. The Court considers all of this evidence sufficient for its purposes in the restitution inquiry. The evidence presented makes it more likely than not that the victims' losses as identified by Agent Lowe were caused by acts undertaken in the course of the conspiracy by indicted (and now convicted) and unindicted co-conspirators.

The Court reached the conclusion that Agent Lowe's testimony is sufficient to establish the victims' identities and losses by a preponderance of the evidence over Garner's objection that it is hearsay. The Federal Rules of Evidence – including those which limit the introduction hearsay evidence – do not, however, apply at sentencing, and restitution is part of sentencing. Fed. R. Civ. P. 1101(d)(3), 18 U.S.C. § 3663A(a)(1) ("when sentencing a defendant . . . the court shall order . . . that the defendant make restitution to the victim of the offense"). Additionally, the United States made it clear during the hearing that all of the underlying physical evidence, summarized in Lowe's charts, was available to Defendant prior to the hearing for examination. Even if the charts summarized aspects of the evidence obtained by Lowe through interviews and unavailable in the materials produced, he was available for cross-examination at the hearing. Finally, the Court notes that, even if the Rules of Evidence applied, Rule 1006 would permit the United States to use a summary or chart to prove the

content of voluminous records so long as the originals or duplicates were available for examination by defendants. Defendant was free to undermine the reliability of the evidence received through Agent Lowe's testimony by cross-examination or by presenting additional evidence, but the Court was not required at this stage in the proceeding to conclude that it was unreliable merely because portions of Agent Lowe's testimony were hearsay or because the documents were not authenticated.

In a final volley, Garner argues that restitution is inappropriate in this instance because the procedure for issuance and enforcement of an order of restitution, under 18 U.S.C. § 3664, has not been respected. Specifically, he argues that the United States Probation Office did not "obtain and include in its presentence report, or in a separate report . . . , information sufficient for the court to exercise its discretion in fashioning a restitution order." He objects, as well, because there has been no "complete accounting of the losses to each victim" completed by the Probation Office. "However, a district court is not necessarily divested of the power to order restitution when the government or the court fails to perfectly comply with the MVRA's procedural provisions." *United States v. Zaic*, 744 F.3d 1040, 1043 (8th Cir. 2014) (citing *Dolan v. United States*, 560 U.S. 605, 611

(2010); *see also United States v. Balentine*, 569 F.3d 801, 807 (8th Cir. 2009)).

In this instance, the United States provided a list identifying the individuals who it believed to be victims of the defendants' scheme to the Probation Office and defendants, including the names and known addresses or last-known whereabouts of the victims, as well as the amount of loss sought on their behalf by the United States based on the evidence available. The Probation Office provided notice to the identified victims to the extent practicable and received Declarations of Victim Losses (Form PROB 72) in return, which were entered in the record of this matter. Additionally, the Court understands that the United States provided the defendants with the amounts of loss that it sought to prove as well as access to any evidence upon which the United States' relied with respect to its position on the amount of loss or might rely in support of its position well in advance of the hearings on the restitution matter. Defendant Corey Garner was provided an opportunity to review those materials and had the opportunity to question Special Agent Alan Lowe at the hearing convened in this matter. Thus, even if the procedural aspects of the MVRA were not followed to the letter, the Court concludes that the spirit of the requirements was met – disclosure, the opportunity for meaningful review of the evidence and the conclusions to be

drawn from them, and the provision of adequate opportunity to raise objections and argument concerning restitution.

Accordingly, for all of the reasons stated during the hearing and in this Memorandum Opinion and Order, the Court concludes that the United States has borne the burden of demonstrating by a preponderance of the evidence that restitution is owed to those individuals identified by Agent Lowe and listed in the spreadsheets. From the evidence presented, the Court concludes that each of those individuals is a person directly and proximately harmed by a co-conspirator's conduct in the course of the scheme, conspiracy, or pattern charged in this matter and that each of the defendants should be held jointly and severally liable for all foreseeable losses within the scope of their involvement in the conspiracy regardless of whether each individual's specific loss is attributable to the particular conspirator being held liable. *See* 18 U.S.C. § 3663A(a)(2). The Court modifies its decision as announced on April 20, 2015, in one respect. Agent Lowe testified that the amount of loss sustained by the individual victims was $1,807,517.06, as reflected on the Master Victim List. The list specific to Defendant Garner, which Agent Lowe testified should reflect the entire amount of loss attributable to the Garner group for the course of the conspiracy, states a loss amount of $1,807,520.06. The three dollar discrepancy

appears to be due to typographical error in the information for Victim # 95. The Master Victim List indicates that he sustained a loss of $8,884.00, and the list specific Defendant Garner indicates that this victim sustained a loss of $8,887.00. Victim # 95's loss is reported as $8,884.00 on the lists provided specific to loss attributable to Defendants Harold Smith, Eli Holley, Sabrina Carmichael, and Brooks Sowell. The Court concludes that the lesser amount is correct.

Accordingly, restitution is ordered, jointly and severally, in the amount of $1,807,517.06 for Defendant Nicholas Corey Garner.

This the 11th day of June, 2015.

**IT IS SO ORDERED.**



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge