UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CRIMINAL ACTION NO. 12-65-DLB-3

UNITED STATES OF AMERICA                                              PLAINTIFF

v.               **MEMORANDUM OPINION AND ORDER**

NICHOLIS COREY GARNER                                   DEFENDANT

\* \*    \* \*    \* \*    \* \*    \* \*    \* \*    \* \*    \* \*

This matter is before the Court upon the Defendant Garner's Motion for Compassionate Release and/or Modification of Reduction in Sentence (Doc. # 1036). Mr. Garner is currently incarcerated[1] at the Coleman Low FCI in Sumterville, Florida. He is 41 years old and has a projected release date of September 20, 2029. *See* BOP Inmate Locator at https://www.bop.gov/inmateloc (last accessed on October 21, 2021).

In his motion[2], Mr. Garner argues that the Bureau of Prisons' (BOP) response to the COVID-19 pandemic has been very poor and the BOP failed to take adequate precautions to protect him and other inmates from COVID-19. He also points to the severe COVID-19 outbreak at FCI Oakdale in the spring of 2020 and the large number of infections and death related to COVID-19 at that facility. Mr. Garner also argues that he suffers from chronic hypertension which would make a bout with COVID-19 problematic

---

[1] Mr. Garner was formerly incarcerated at FCI Oakdale, Louisiana when he filed his motion.

[2] Defendant's initial motion for compassionate release (Doc. # 1018) was denied without prejudice for failure to exhaust. See Doc. # 1033.

1

for him.  Additionally, he argues that the 18 U.S.C. § 3553(a) factors favor compassionate release for him, emphasizes the substantial progress he has made while in custody, and attaches copies of the BOP certificates he has earned for completing several BOP programs.

In its response (Doc. # 1039), the Government argues that Defendant Garner has failed to satisfy the requirements for a compassionate release.  While recognizing that his medical condition may be considered an extraordinary and compelling basis for release, the Government argues that the 3553(a) factors do not support his request for compassionate release.  Defendant has filed a reply (Doc. # 1048) and has submitted multiple addendums and updates for the Court's consideration (Docs. # 1049, 1054, 1059, 1063, 1066, 1067 & 1072).  Within those filings Mr. Garner provided medical updates including a hernia he suffered from which caused him to have blood in his stool (Doc. # 1066).  According to Mr. Garner, his hernia made it impossible to exercise which has exacerbated his other medical conditions.  (*Id*.)  These conditions now include hypertension, overweight, high cholesterol and pre-diabetic.  (Doc. # 1072).  Mr. Garner also sets forth his release plan if the Court grants him a compassionate release. Additionally, several family members and friends have written letters in support of his request for compassionate release (Docs. # 1042-1044, 1046 & 1053).  And since the filing of the original motion and several updates, Mr. Garner is now fully vaccinated against COVID-19.  *See* Sealed Attachment showing he received his second dose of the Pfizer BioNTech vaccine on May 25, 2021.[3]

---

[3] Although Mr. Garner has provided numerous updates on his medical conditions, he has not mentioned in any of his filings that he has now been fully inoculated with the COVID-19 vaccine.

Requests for compassionate release are evaluated under 18 U.S.C. § 3582(c)(1)(A). That statute provides that the court, ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

District courts generally apply a three-step test when analyzing motions for compassionate release. *See United States v. Jones,* 980 F.3d 1098, 1107-08 (6th Cir. 2020). First, the Court must determine whether extraordinary and compelling reasons warranting a sentence reduction exist. *Id.* Second, the court must consider any applicable policy statements found in the United States Sentencing Guidelines. *Id*. at 1108. Third, the court must determine whether relief is warranted under the factors stated in 18 U.S.C. § 3553(a). *Id.* There is no applicable guidelines policy statement when a prisoner files a motion for compassionate relief on his own behalf. *Id*. at 1108-09. Accordingly, when dealing with motions filed by inmates, district courts may skip step two of the three-step analysis. *Id*. at 1111. In one of its more recent published cases discussing compassionate release motions, the Sixth Circuit stated that "district courts may deny compassionate-release motions when any of the three prerequisites listed in §

3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

"Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.' *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). "Instead, when an imprisoned person files a motion for compassionate release, the district court has "full discretion ... to determine whether an extraordinary and compelling reason justifies compassionate release." *Jones*, 908 F.3d at 1109.

Here, Mr. Garner's documented health issues, while serious, are insufficient in the Court's view to rise to the level of extraordinary or compelling. Broadly construed, the records submitted establish that he suffers from high blood pressure, high cholesterol and pre-diabetes. And although these conditions are known risk factors for COVID-19, there is nothing in the record to establish that the BOP is not adequately treating Defendant's conditions while he has been incarcerated. In the Court's view, the amendments to the compassionate release statute enacted as part of the First Step Act of 2018 were not designed to give inmates any extra relief when they may be dissatisfied with the medical care and treatment they are receiving by the BOP. Any such action can be raised in a separate action filed after proper exhaustion of available administrative remedies.

And just as significantly, Mr. Garner is now fully vaccinated against the COVID-19 virus because he has received both Pfizer BioNTech vaccine shots. *See* attachment. The vaccines have been shown to be safe and effective in preventing disease, hospitalization and deaths. See *United States v. Cheatham*, No. 2:17-CR-20053-1, 2021 WL 1731712, at *2 (E.D. Mich. May 3, 2021) (Murphy, J.) (collecting sources on the effectiveness of COVID-19 vaccines). Because Defendant is fully vaccinated against

4

COVID-19, "his susceptibility to the disease is [not] 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, No. 17-cr-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021).  In fact, many district courts within the Sixth Circuit have routinely refused to find that a fully vaccinated inmate has an extraordinary and compelling reason for release because of their fear of contracting COVID-19.  *United States v. Collier*, 15-cr-20774-1, 2021 WL 1560079, at *2 (E.D. Mich. Apr. 21, 2021) (Murphy, J.) (collecting cases).  Put simply, Mr. Garner's medical circumstances are insufficient, standing alone, to satisfy the first prong of the test.

Additionally, the BOP is taking precautionary and preventative measures to curtail and prevent COVID-19 outbreaks.  Every BOP institution has successfully initiated vaccination campaigns to administer COVID-19 vaccines to its inmate population.  More specifically, according to the BOP's official website, as of Thursday, October 21, 2021, FCC Coleman[4] had 4880 fully inoculated inmates out of 5790 total inmates, which equates to almost 84.3%.  *See* https://bop.gov/coronavirus (last accessed on October 21, 2021).  As a result of the BOP's vaccination efforts, the COVID-19 outlook in October, 2021 is much brighter now than when Mr. Garner's motion was originally filed.

Given the BOP's current vaccination mitigation efforts, there is no more than an exceedingly slim possibility that COVID-19 will spread through FCI Coleman Low, that prison officials will then fail to contain the outbreak, that Mr. Garner will contract COVID-19, and that he will subsequently develop life-threatening symptoms.  Such speculative possibilities of harm do not justify the extraordinary remedy of early release from a properly imposed sentence.

---

[4] FCI Coleman Low is one of the five BOP institutions that comprise FCC Coleman.  Specific figures for FCI Coleman Low were not available via the BOP website.

And even if Mr. Garner were able to satisfy the "extraordinary and compelling reason" prong, the Court concludes that compassionate release is not warranted when the Court considers the applicable § 3553(a) factors. Most significantly, the nature and circumstances of the offense and his history and characteristics do not favor release in the Court's view.

Here, Mr. Garner and several others engaged in a sophisticated international scheme in which they created fake businesses in the United States, opened bank accounts with fake documents, and then used the businesses to list cars for sale on the internet. Mr. Garner played a leadership role in the offense. When buyers transferred money into the bank accounts, the conspirators would empty the accounts and split the money. None of the buyers never received their cars. *See United States v. Carmichael*, 676 F. App'x 402, 404 (6th Cir. 2017). The Court ultimately ordered Mr. Garner to pay more than $1.8 million in restitution to more than 550 victims located throughout the United States. (Doc. # 775). Mr. Garner pleaded guilty without a plea agreement to conspiracy to commit wire fraud, and Judge Joseph Hood sentenced him to 240 months of imprisonment. While that sentence was the statutory maximum for wire fraud, the properly calculated advisory guideline range would have been 292-365 months but for the statutory cap.

Additionally, Mr. Garner has a significant criminal history from multiple states (Category V), including convictions for multiple drug offenses, aggravated assault, fleeing and evading, resisting arrest, theft, and terroristic threatening. (Doc. # 628, Presentence Report at ¶¶ 56-67). Mr. Garner's lengthy criminal history shows a demonstrated lack of respect for the law and a need to deter the Defendant from future criminal conduct.

Moreover, he has served just over one-half of his sentence.

Releasing Mr. Garner at this juncture would unduly depreciate the seriousness of his offense, and would neither promote respect for the law nor provide just punishment for the offense. And while the Court recognizes the significant strides Mr. Garner has made while incarcerated with the numerous courses he has completed and achievements he has earned, those accomplishments, when weighed against the remaining § 3553(a) factors, do not weigh in favor of compassionate release in the Court's view. To release Mr. Garner now due to the COVID-19 pandemic would create, not avoid, an unwarranted sentencing disparity, would diminish the seriousness of the crime and would not deter criminal activity. Put simply, consideration of the § 3553(a) factors, both individually and collectively, weigh against his early release. Accordingly,

**IT IS ORDERED** that Defendant Garner's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) (Doc. # 1036) be, and is hereby **denied**.

This 21st day of October, 2021.

Signed By:
*David L. Bunning*   DB
**United States District Judge**